IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PAUL G. SIMMONS : CIVIL ACTION
      Petitioner :
  v. :
:
PA STATE ATTORNEY GENERAL, et al. :
      Respondents : No. 11-2924

## MEMORANDUM

J. WILLIAM DITTER, JR., J.                                                May 22, 2013

Presently before this court is a pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Paul G. Simmons and Respondents' answer thereto. Simmons is currently incarcerated in the State Correctional Institution in Huntingdon, Pennsylvania. For the reasons that follow, the petition will be denied.

## FACTS AND PROCEDURAL HISTORY:

After a jury trial, Simmons was found guilty of attempted kidnapping, robbery, simple assault, theft by unlawful taking or disposition, conspiracy to commit kidnapping, conspiracy to commit robbery, conspiracy to commit simple assault, and conspiracy to commit theft by unlawful taking. The following facts supporting the convictions were introduced into evidence at trial:

> On January 15, 2002, Chris Marcano ("Marcano") and his father, Selwyn Marcano, were outside the Renaissance Bistro ("bar") in Reading, Pennsylvania. The bar is owned by Selwyn Marcano. Marcano and his father were attempting to unlock the front door when a sports utility vehicle approached, coming from the wrong direction on a one-way street. The vehicle parked in the driveway and two men got out, one of whom was [Simmons]. When they approached Marcano, he asked if anything was

wrong, at which point [Simmons] and the other individual began striking Marcano and his father.

Marcano tripped over a flower pot, and [Simmons] was punching and kicking him. The men began dragging Marcano toward the vehicle, at which point Marcano grabbed onto a sign pole. During the altercation, [Simmons] took a bag of money from Marcano's father. Marcano loosened his grip on the sign pole, and they continued to drag him to the vehicle. Marcano was clinging onto the outside of the vehicle to avoid being shoved inside. There were two other men in the sports utility vehicle; Marcano heard the driver say, "There are too many people, let's get out of here," and the man in the back seat stated, "To hell with it, let's just shoot him here, shoot him here." The man in the back seat was identified as co-defendant Maurice Price. Eventually a crowd gathered and the assailants drove away.

Commonwealth v. Simmons, No. 652 MDA 2003, at 1-2 (Pa. Super. April 5, 2004) (unpublished memorandum) (citations omitted). On March 24, 2003, Simmons was sentenced to a term of 11½ to 25 years of imprisonment.

Simmons filed a direct appeal arguing that (1) the evidence was insufficient to support his convictions for attempt to commit kidnapping and conspiracy to commit kidnapping; and (2) ineffective assistance of trial counsel for failing to request a limiting instruction to the jury regarding a witness's statement. The Pennsylvania Superior Court affirmed the judgment of sentence on April 5, 2004. Commonwealth v. Simmons, No. 652 MDA 2003 (Pa. Super. April 5, 2004) (unpublished memorandum). Simmons did not file a petition for allowance of appeal in the Pennsylvania Supreme Court.

On August 16, 2004, Simmons filed a pro se petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Con. Stat. § 9541, et seq., requesting leave to file a nunc pro tunc petition for allowance of appeal to the Pennsylvania Supreme Court.

2

Simmons' request was granted. The Pennsylvania Supreme Court denied his petition for allowance of appeal on December 13, 2005. Commonwealth v. Simmons, 703 MAL 2005 (Pa. Dec. 13, 2005).

On May 15, 2006, Simmons filed a second pro se PCRA petition and appointed counsel filed an amended PCRA petition.[1] Simmons presented the following claims:

> 1) ineffective assistance of counsel for failing to challenge his excessive sentence;
>
> 2) ineffective assistance of counsel for failing to have juror number 2 removed from case;
>
> 3) trial court error for failure to remove juror number 2; and
>
> 4) appellate counsel was ineffective for failing to properly present the aforementioned claims on appeal.

After the court held an evidentiary hearing on August 10, 2009, appointed counsel filed a brief in support of Simmons' amended PCRA petition on September 17, 2009. The PCRA court denied Simmons' petition on November 2, 2009. The Pennsylvania Superior Court affirmed the denial of PCRA relief on November 8, 2010. Commonwealth v. Simmons, No. 2049 MDA 2009 (Pa. Super. Nov. 8, 2010). The Pennsylvania Supreme Court denied Simmons' petition for allowance of appeal on March 1, 2011. Commonwealth v. Simmons, No. 877 MAL 2010 (Pa. March 1, 2011).

---

[1] Although this petition was initially dismissed as an untimely second PCRA petition, the Pennsylvania Superior Court deemed the petition a timely petition ripe for review. Commonwealth v. Simmons, No. 1928 MDA 2007 (Pa. Super. Oct. 31, 2008). As a result, the Superior Court remanded the petition back to the PCRA court for review of the substantive issues presented in Simmons' PCRA petition. Id.

Thereafter, Simmons filed this timely petition for a federal writ of habeas corpus claiming:

1) trial and appellate counsel were ineffective for failing to challenge his excessive sentence;

2) trial court error in failing to remove juror number 2;

3) trial counsel was ineffective for failing to remove juror number 2 thereby violating his right to a fair and impartial jury; and

4) the evidence at trial was insufficient to support his convictions for attempted kidnapping.

Respondents have filed an answer to Simmons' habeas petition asserting that Simmons is not entitled to federal habeas relief because his claims are meritless.

## DISCUSSION:

### A. Standard of Review

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court expounded upon this language in Williams v. Taylor, 529 U.S. 362 (2000). In Williams, the Court explained that "[u]nder the 'contrary to' clause, a

federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." 529 U.S. at 412-413 (quoted in Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000)). The Court in Williams further stated that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. "In further delineating the 'unreasonable application of' component, the Supreme Court stressed that an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000) (citing Williams, 529 U.S. at 411).

1. **Ineffective Assistance of Counsel and Excessive Sentence**

Claims of ineffective assistance of counsel are governed by Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the United States Supreme Court set forth the standard for a petitioner seeking habeas relief on the grounds of ineffective

assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.

Because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. In determining prejudice, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

"It is past question that the rule set forth in Strickland qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams, 529 U.S. at 391. Thus, Simmons is entitled to relief if the Pennsylvania courts' decision rejecting his claims of ineffective assistance of counsel was either "contrary to, or involved an unreasonable application of," that established law. Id.; see also Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002); Bell v. Cone, 535 U.S. 685, 698-699 (2002) ("It is not enough to convince a federal habeas court that, in its independent judgment, the

6

state–court decision applied Strickland incorrectly." ).

In his first claim, Simmons alleges that trial and appellate counsel were ineffective for failing to challenge his excessive sentence. Simmons was sentenced to a term of 11½ to 25 years of imprisonment for his convictions for attempted kidnapping, robbery, conspiracy to commit robbery and simple assault. As the state court explained:

> . . . [A]t the time of sentencing, [Simmons] was facing a potential maximum aggregate sentence of from eighteen years to thirty-six years, yet received a sentence considerably less than that term. See 18 Pa.C.S. § 1103(1), (3); 1104(2). Moreover, the sentence imposed by the trial court on the charges of robbery, conspiracy, and simple assault were all within the recommended standard range of the sentencing guidelines . . .

Commonwealth v. Simmons, No. 2049 MDA 2009, at 8 n.7 (citations omitted). Simmons does not contend that his sentence exceeds statutory limitations; however, he does argue that his sentence for attempted kidnapping was excessive because he was sentenced to the statutory maximum sentence which was outside the sentencing guidelines. Simmons also argues that trial counsel should have objected when the trial court cited his prior assault offenses as an aggravating factor in departing from the Sentencing Guidelines when these prior convictions had already been used in calculating the guideline range, thereby effectively "double-counting" his record of prior assaults.

It is well established that Pennsylvania's Sentencing Guidelines are purely advisory in nature.[2] Commonwealth v. Yuhasz, 923 A.2d 1111, 1118 (Pa. 2007). Despite

---

[2]The Pennsylvania Supreme Court has stated that "Pennsylvania's statutory sentencing scheme is indeterminate, advisory, and guided." Commonwealth v. Yuhasz, 923 A.2d 1111, 1118 (Pa. 2007). The Court then went on to explain:

7

the recommendations of the Sentencing Guidelines, the trial court retains broad discretion in sentencing matters and may sentence defendants outside the Guidelines as long as the sentence does not exceed the statutory maximum sentence. Id. at 118-1119 (citations omitted). Moreover, in fashioning a sentence, "a court is required to consider the particular circumstances of the offense and the character of the defendant." Commonwealth v. Griffin, 804 A.2d 1, 10 (Pa. Super. 2002) (citations and quotations omitted).

In determining that there was no basis upon which to challenge Simmons' sentence, the state court referred to the comments placed on the record by the trial court at the time of sentencing:

> The Court believes total confinement is necessary in this case. Due to the fact [Simmons] does have a prior record - the prior record does include an aggravated assault, simple assault, firearms without a license offense, criminal trespass, another simple assault as a juvenile. Those are violent offenses. For those reasons, [Simmons] having not only a prior record but a prior record of violence, - I see a recklessly endangering another person as well - we believe that departure from the guidelines is necessary with regard to at least the attempted kidnapping. This was done in broad daylight on the

---

> The Sentencing Guidelines, located at 204 Pa.Code § 303 et seq., recommend ranges of minimum sentences based on the type of offense, the defendant's prior criminal history, and a variety of aggravating and mitigating factors. The standard recommended minimum sentence is determined by the intersection of the defendant's prior record score and the offense gravity score on the Basic Sentencing Matrix. 204 Pa.Code § 303.16. The Guidelines further recommend that if the court determines that aggravating or mitigating circumstances are present, it may impose a sentence that is a specified amount of time greater than the upper limit of the standard range or less than the lower limit of the standard range. 204 Pa.Code § 303.13.

Id.

8

> city streets of Reading. It involved a violent offense which was witnessed by a bus driver. The peace of the neighborhood was completely disturbed. The victim, Chris Marcano, was in fear of certainly [sic] serious bodily injury.
>
> I've considered the guidelines, the sentencing guidelines. I've considered the pre-sentence report, the facts contained therein, statements of counsel, the witness presented, the statement of [Simmons] in fashioning an appropriate sentence.

Commonwealth v. Simmons, No. 2049 MDA 2009, at 7 (Pa. Super. Nov. 8, 2010) (citing 3/24/03, at 7-8).

While "[i]t is impermissible for a court to consider factors already included within the sentencing guidelines as the sole reason for increasing or decreasing a sentence to the aggravated or mitigated range . . . [t]rial courts are permitted to use prior conviction history and other factors already included in the guidelines if, they are used to supplement other extraneous sentencing information." Commonwealth v. Simpson, 829 A.2d 334, 339 (Pa. Super. 2003) (citations omitted). In the instant case, the trial court considered not only Simmons' prior record but also the impact on the victim and the threat to the community. See 42 Pa. Cons. Stat. Ann. § 9721(b). In doing so, the trial court evaluated the circumstances surrounding the attempted kidnapping in an attempt to strike a balance among the needs of the victim, the community and the defendant. See Williams v. New York, 337 U.S. 241, 246 (1949) (a sentencing judge may exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law). Because it was within the trial court's discretion to sentence Simmons to the statutory maximum sentence for attempted

kidnapping, counsel cannot be deemed ineffective for failing to challenge his sentence. Moore v. Deputy Comm'r of SCI-Huntingdon, 946 F.2d 236, 245 (3d Cir. 1991) (counsel cannot be deemed ineffective for failing to raise a meritless claim).

Simmons also argues that trial counsel was ineffective for failing to file a post-sentence motion challenging his excessive sentence and that appellate counsel was ineffective for failing to request leave of court to file a nunc pro tunc post-sentence motion challenging the sentence. He contends that counsels' failure to file such a request precluded the trial and appellate courts from reviewing his claim due to waiver.[3] In reviewing this aspect of his claim, I must determine whether Simmons' right to effective assistance of counsel on direct appeal, see Evitts v. Lucey, 469 U.S. 387, 393-94 (1985), was violated when counsel failed to properly present his sentencing claim. In order to satisfy the first prong of the Strickland test, Simmons is required to show that appellate counsel's failure to properly present a sentencing claim fell outside "the wide range of reasonable professional assistance; that is, [he would have to] overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [appellate] strategy.'" Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999) (citing Strickland, 466 U.S. at 689). A petitioner satisfies Strickland's prejudice prong by demonstrating a reasonable probability that he would have prevailed on appeal if the issue

---

[3]Trial counsel filed a notice of appeal after Simmons' sentencing, but never filed post-sentence motions. At his PCRA hearing, Simmons' trial counsel testified that although he did not specifically remember the details of the case, he surmised that Simmons had "most likely" **not** asked him to file post-sentence motions because he normally would have filed such motions if asked to do so by a client. See Appx. at 370a; (N.T. 8/10/09, at 13).

10

had been presented. Smith v. Robbins, 528 U.S. 259, 285 (2000).

I conclude that appellate counsel was not ineffective for failing to present this claim on appeal. "One element of effective appellate strategy is the exercise of reasonable selectivity in deciding which arguments to raise." Buehl, 166 F.3d at 174; see Smith v. Murray, 477 U.S. 527, 536 (1986) (stating that the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of appellate advocacy") (quoting Jones v. Barnes, 463 U.S. 745, 751-752 (1983)); see also Smith v. Robbins, 528 U.S. 259, 287-288 (2000) (to demonstrate ineffective assistance of appellate counsel, petitioner must show that the issue not raised on appeal "was clearly stronger than issues that counsel did present"). In this case, the underlying sentencing claim has no merit, so it was reasonable for appellate counsel to conclude that it was unlikely that he could prevail on this claim and decide not to pursue it. Accordingly, this claim is denied.

### 2. Trial Court Error for Failure to Remove Juror

In his second claim, Simmons contends that the trial court erred in failing to remove Juror Number 2 who was allegedly sleeping during trial. In denying this claim, the state court explained:

> . . . [T]he record reveals that the trial court specifically asked the parties whether the juror in question - who began as an alternate, but was elevated to the jury when another juror was dismissed - should be removed, but that objection was strenuously objected to by defense counsel for both defendants. Their position is evident in the following exchange:
>
> **THE COURT:** . . .[A]re you objecting to

|                              |                                                                              |
|------------------------------|------------------------------------------------------------------------------|
|                              | [the proposal to remove the juror]?                                          |
| **[COUNSEL FOR CO-DEFENDANT]:** | I would, Your Honor. I think she is paying attention.                     |
| **[COUNSEL FOR [SIMMONS]]:**  | She could add something to deliberations in her wisdom because of her age.   |
| **THE COURT:**                | Alright. If the defendants don't want to have her replaced, I won't do anything more . . . |

Commonwealth v. Simmons, No. 2049 MDA 2009, at 3-4 (citing N.T. 2/26/03 - 2/27/03, at 265).

If sleep by a juror makes it impossible for that juror to perform his or her duties or would otherwise deny the defendant a fair trial, the sleeping juror should be removed from the jury. United States v. Freitag, 230 F.3d 1019, 1023 (7th Cir. 2000). In this case, however, defense counsel argued that they felt that Juror Number 2 was capable of fulfilling her duties and thus, would not deny the defendants a fair trial. Indeed, counsel argued that they felt Juror Number 2 was a valuable asset on the jury. Because Simmons has not demonstrated that it was impossible for Juror Number 2 to perform her duties as a juror, I conclude that Simmons was not denied his right to a fair and impartial jury by the trial court's failure to remove that juror. Accordingly, this claim is denied.

### 3. Ineffective Assistance of Counsel for Failure to Move for Removal of Juror

In his third claim, Simmons argues that trial counsel was ineffective for failing to move for the removal of Juror Number 2. In denying this claim, the state court concluded that, based upon trial counsel's comments during trial, "counsel had made a reasonable strategic decision, designed to advance [Simmons'] interests, that the juror in question was competent to serve." Commonwealth v. Simmons, No. 2049 MDA 2009, at 4-5. "The mere fact that [Simmons] was convicted - an event facilitated by the overwhelming evidence of guilt produced by the Commonwealth - does not warrant a finding that trial counsel's strategic decision was wrong, or constituted ineffectiveness." Id. at 5. The court also noted that during Simmons' PCRA hearing, "trial counsel expressed the view that, rather than sleeping, he 'thought she may have been listening carefully.'"[4] Id. at 5, n.6 (citing N.T. 8/10/09, at 14).

I conclude that the state courts' disposition of this matter did not result in a decision that was contrary to federal law, or involved an unreasonable application of, clearly established federal law. As the state court noted, trial counsel testified that he felt Juror Number 2 was an attentive juror and competent to serve on the jury. Thus, trial counsel had a sound strategic basis for objecting to the removal of Juror Number 2.

In any event, Simmons has failed to establish that he was prejudiced by counsel's alleged deficient performance. It is firmly established that a court must consider the

---

[4] I note that the state courts' determination that defense counsel's testimony was credible is a factual finding entitled to a presumption of correctness absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); see Sumner v. Mata, 449 U.S. 539, 545-47 (1981) (a factual determination made by state courts, whether the court be a trial court or an appellate court, is entitled to a presumption of correctness).

strength of the evidence in deciding whether the Strickland prejudice prong has been satisfied. Buehl, 166 F.3d at 172. In Strickland, the Supreme Court emphasized that "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Id. (citing Strickland, 466 U.S. at 695). This is necessary because Strickland's prejudice prong requires a court to determine whether there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Id.

As the Superior Court found upon consideration of this claim, the Commonwealth presented overwhelming evidence of guilt. There is no evidence that the removal of Juror Number 2 would have changed the outcome of the trial. Accordingly, Simmons has failed to establish that he has suffered any prejudice through trial counsel's alleged deficient performance and fails to meet his burden to show that, but for counsel's error, the outcome would have been different. Strickland, 466 U.S. at 694. This claim is denied.

### 4. Sufficiency of the Evidence

In his last argument, Simmons contends that the evidence produced at trial was insufficient to sustain his conviction for attempted kidnapping. It has long been established that due process requires that a person can only be convicted of the crime with which he is charged by proof of every element of the criminal offense beyond a

reasonable doubt.[5]  Jackson v. Virginia, 443 U.S. 307, 316 (1979); In re Winship, 397 U.S. 358, 364 (1970); Davis v. United States, 160 U.S. 469, 488 (1895).  Claims challenging the sufficiency of the evidence "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference."  Coleman v. Johnson, _ U.S. _ , 132 S.Ct. 2060, 2062 (2012) (per curiam).  As the Supreme Court has explained:

> First, on direct appeal, "it is the responsibility of the jury - not the court - to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."  And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

Id. (citing Cavazos v. Smith, 565 U.S. 1, 132 S.Ct. 2, 4 (2011) (per curiam)) (citation omitted).

In reviewing a challenge to the sufficiency of the evidence, a court must determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Sullivan v. Cuyler, 723 F.2d 1077, 1083-84 (3d Cir. 1983) (quoting Jackson, 443 U.S. at 319) (emphasis in original); see also McDaniel v. Brown, 558 U.S. 120, 133-134 (2010).  The task of resolving differences in the testimony, weighing the

---

[5]When reviewing a sufficiency of the evidence claim on habeas corpus review, federal courts look to the evidence the state considers adequate to meet the elements of a crime governed by state law.  Jackson v. Byrd, 105 F.3d 145, 149 (3d Cir. 1997).

15

evidence, and drawing reasonable inferences from basic facts to ultimate facts is reserved for the factfinder and is beyond the scope of federal habeas sufficiency review. Jackson, 443 U.S. at 319. However, "the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." Coleman, 132 S.Ct. at 2064. In the instant case, I conclude that the state courts' application of the state court equivalent of the Jackson standard was within the bounds of reasonableness.[6]

In addressing this claim in the state court, the Pennsylvania Superior Court set forth the following law:

> Section 901(a) of the criminal code states, "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). In the instant case, [Simmons] was convicted of a criminal attempt to commit kidnapping. Kidnapping is defined in 18 Pa.C.S.A. § 2901(a) as follows: "A person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation . . ."

Commonwealth v. Simmons, No. 652 MDA 2003, at 5 (Pa. Super. April 5, 2004).

The Pennsylvania court then applied the facts of this case as follows:

Viewing the evidence in the light most favorable to the Commonwealth, it was established at trial that [Simmons] and three other men drove their vehicle the wrong direction on a one-way street to the bar, parked in the driveway, approached Marcano, and began kicking and punching him. [Simmons] and another individual were pushing and pulling Marcano toward the vehicle, as he was struggling to get free. Even after [Simmons]

---

[6]Although the state court did not specifically cite Jackson, Pennsylvania law comports with the Jackson standard. See Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1232 (3d Cir. 1992).

took Selwyn Marcano's bag, they continued to drag Marcano to the vehicle. This was corroborated by [Thomas] Brewer, the bus driver was witnessed the altercation for a period of several minutes. Marcano testified he was clinging to the runners on the outside of the SUV to avoid being shoved inside. At that point, the driver expressed concern about the growing crowd, to which Price replied, "Let's just shoot him here." In addition, [Kevin] Martin testified to inculpatory statements made by [Simmons] and Price while in Berks County Prison. This evidence, if believed by the jury, is sufficient to convict [Simmons] of criminal attempt to commit kidnapping. The act of violently dragging Marcano toward the open vehicle constituted a substantial step toward the commission of the crime of kidnapping.

Id. at 5-6.

The Supreme Court has recently stated that in order to prevail in a sufficiency of the evidence argument, a defendant must show that the jury's "finding was so insupportable as to fall below the threshold of bare rationality." Coleman, 132 S.Ct. at 2065. Although Simmons has argued that he was simply committing a robbery - not a kidnapping - he has not proven that the jury's finding in this case was not supported by the evidence. As the state court pointed out:

> Marcano testified [Simmons] continued to try to force him into the car even after [Simmons] had taken his father's money. There was no testimony [Simmons] or his accomplices ever took anything from Marcano or demanded money. Marcano's testimony is they simply walked up to him and began striking him unprovoked, and dragging him toward the waiting vehicle. Clearly, there was sufficient evidence for the jury to find this was an attempted kidnapping.

Commonwealth v. Simmons, No. 652 MDA 2003, at 7.

In viewing the evidence in the light most favorable to the Commonwealth, I conclude that the Pennsylvania courts reasonably found that a rational trier of fact could

17

have found beyond a reasonable doubt that the evidence was sufficient to support Simmons's conviction for attempted kidnapping. See Coleman, 132 S.Ct. at 2065; see also Jackson, 443 U.S. at 318-319. The evidence shows that Simmons and another man violently dragged the victim to the car against the victim's will - a substantial step toward kidnapping the victim. Since the state courts' findings are not contrary to United States Supreme Court precedent nor an unreasonable determination of the facts, the state courts' findings will not be overturned. 28 U.S.C. § 2254(d). Accordingly, Simmons' claim is denied.

**CONCLUSION:**

After close and objective review of the arguments and evidence, I conclude that Simmons' petition for writ of habeas corpus is meritless. Accordingly, Simmons' petition will be denied.

Further, because Simmons' claims are both legally and factually meritless, there is no need to conduct an evidentiary hearing, as it would not change the outcome of this matter. See 28 U.S.C. § 2254(e)(2); see also Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("an evidentiary hearing is not required on issues that can be resolved by reference to the state court record") (citations omitted).

An appropriate order follows.